UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 16-cr-316-RHK-KMM |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| (1) Alexis Rios-Uscanga, *also known as Alex*, | |
| Defendant. | |

LeeAnn K. Bell, Assistant U.S. Attorney, counsel for the government

Reynaldo A. Aligada, Jr., Assistant Federal Defender, counsel for Mr. Rios-Uscanga

Alexis Rios-Uscanga moved to suppress the fruits of an allegedly unlawful search and seizure. ECF No. 30. Specifically, Mr. Rios-Uscanga argues that the search of a home in North Minneapolis was based on a warrant not supported by probable cause. Mr. Rios-Uscanga is seeking suppression of the evidence seized during that search, as well as evidence seized pursuant to subsequent warrants and a custodial statement.

For the reasons set forth below, the Court concludes that the affidavit upon which the initial search warrant was based did not establish probable cause to search the home. Moreover, its legal inadequacy is so apparent that the good-faith exception does not overcome the exclusionary rule. The physical evidence seized at the home, as well as through the subsequent warrants, is "fruit" of the improper search warrant and should be suppressed. However, the Court recommends the custodial statement not be suppressed.

**I.     The Warrants, Searches, and Statements at Issue**

Mr. Rios-Uscanga moves to suppress evidence obtained as a result of four warrants: (1) a warrant issued on October 4, 2016 to search a home at 5101 Russell

Avenue North, (2) a warrant issued on October 6, 2016 to search a 2003 yellow Hummer H2, (3) a warrant issued on October 6, 2016 to search a 2010 white Mercedes Benz GL450, and (4) a warrant issued on October 21, 2016 to search four cell phones seized at the Russell Avenue residence when the first warrant was executed.[1] Mot. at 1-2; *see also* Def.'s Mem. of Law in Supp. of Mot. to Suppress Fruits of Unlawful Search and Seizure ("Def.'s Mem."), ECF No. 51. Mr. Rios-Uscanga also seeks suppression of a statement made to law enforcement on October 5, 2016 after the search of the Russell Avenue residence. Mot. at 1.

### A.   The Initial Warrant: 5101 Russell Avenue North

On October 4, 2016, Minneapolis Police Officer Ricardo Muro obtained a warrant to search a residence at 5101 Russell Avenue North. Ex. A at 60-62. In support of the warrant application, Officer Muro submitted a sworn affidavit stating he had fourteen years of experience as a police officer and was a member of the Homeland Security Investigations task force. Ex. A at 60. The application sought permission to search the premises for narcotics, including cocaine and methamphetamine; monies obtained from illegal drug sales; weight and packing materials; telecommunications devices used to facilitate narcotics sales; "writings, drug notes, [and] mailings showing constructive possession of control[led] substances or standings at a particular address"; and firearms. Ex. A at 59.

Officer Muro's affidavit included the following relevant information:

- A confidential reliable informant had previously done a controlled purchase of narcotics from a dealer known to the informant as "Primo."

---

[1] The four challenged warrants were submitted with Mr. Rios-Uscanga's post-hearing memorandum. Exhibit A contains the warrant application, warrant, and receipt, inventory, and return related to the search of 5101 Russell Avenue North. For ease of review, a copy of that warrant and its related materials are included in this report and recommendation as Attachment A. Exhibit B contains documents related to the search of the Hummer H2. Exhibit C contains documents related to the search of the Mercedes Benz GL450. Exhibit D contains documents related to the search of the cell phones seized during the search of the Russell Avenue residence. The exhibits are Bates numbered, and those page numbers provide the pin cites in this report and recommendation.

> The purchase was conducted in the "recent past." No location was mentioned.

- Physical surveillance conducted at an unspecified time, of an unspecified location led to the identification of "Primo" as "Alex E. Rios."[2] At some point, the informant positively identified a photograph of Rios as "Primo."

- Within the three days before the warrant application and at the request of Officer Muro, the informant placed a phone call and exchanged text messages with Rios requesting more narcotics. The informant and Rios discussed weights, prices, and meeting locations.

- Officer Muro had seen Rios enter and exit 5101 Russell Avenue North. Officer Muro had also seen a yellow Hummer, known to be Rios's vehicle, parked at the home. No mention was made that the car or Mr. Rios-Uscanga had been seen at the address more than once.

- The residence at 5101 Russell Avenue North "is listed" to Alejandra Cruz Castro, who had been identified as Alex E. Rios's "girlfriend." The affidavit does not explain who identified Ms. Castro as Rios's girlfriend, when that identification was made, or how the person identifying her knew that information.

Based on this information, Officer Muro said he believed the home was being "utilized for the storage of narcotics and/or narcotics proceeds." Ex. A at 60. He therefore sought a warrant to search the residence at 5101 Russell Avenue North. Ex. A at 61. The warrant was signed by a Hennepin County district judge on October 4, 2016, Ex. A at 62, and the home was searched the following day, Ex. A at 63-64. During the search, officers seized a significant quantity of narcotics, firearms and ammunition, keys to several vehicles, cash, several cell phones, and identification documents, among other items. Ex. A at 63-64.

---

[2] Mr. Rios-Uscanga concedes that the person identified in the warrant materials as "Alex E. Rios" is Alexis Rios-Uscanga. Def.'s Mem. at 2 n.3.

3

### B. The Subsequent Warrants

Following the search of the Russell Avenue home, officers sought three additional warrants to search two vehicles and four cell phones. Ex. B at 72; Ex. C at 82; Ex. D at 96, 98. Both vehicle warrants were issued on October 6, 2016 by the same Hennepin County district judge as the initial warrant, but these applications were prepared by Minneapolis Police Officer R. Walker. Ex. B at 70-72; Ex. C at 80-82. Officer Walker's affidavits relied heavily on the evidence seized during the search of the Russell Avenue premises to establish probable cause for the search of the vehicles. Ex. B at 71; Ex. C at 81. Specifically, the affidavits indicated that suspected narcotics, firearms, and a large amount of cash were seized during the October 5, 2016 search, as were keys to the Hummer and the Mercedes Benz. Ex. B at 71; Ex. C at 81. They also clearly stated that Mr. Rios-Uscanga "lived at that residence," a detail that was entirely absent from the initial affidavit. *Compare* Ex. B at 71; Ex. C at 81, *with* Ex. A at 61. Based on Officer Walker's training and expertise, he indicated that narcotics dealers often use their vehicles to store and transport contraband, and requested permission to search the cars as a result. Ex. B at 71; Ex. C at 81. The Hennepin County judge signed the warrants, which were executed the same day, turning up more narcotics and identification documents, among other evidence. Ex. B at 74; Ex. C at 84.

Roughly two weeks later, Special Agent Travis Hamblin sought a warrant to search four cell phones seized during the search of the Russell Avenue residence. Ex. D at 100, 109. As with the warrant applications to search the vehicles, Special Agent Hamblin relied principally on the search of the Russell Avenue home to establish probable cause to search the cell phones. *See* Ex. D. at 103, ¶ 8. In his affidavit, Special Agent Hamblin referred to the Russell Avenue address as Mr. Rios-Uscanga's residence and tied the phones to the search of that location, the search of the vehicles, and the contraband seized during all three searches. Ex. D. at 102-03, ¶¶ 6-8. Based on the affidavit, the warrant to search the four cell phones was issued on October 21, 2016. Ex. D. at 96-99.

### C. The Statement

Mr. Rios-Uscanga also seeks suppression of a statement that was made to law enforcement officers on October 5, 2016. Mot. at 1. There are very few details in the record about the timing, content, or conditions of the statement that Mr. Rios-

4

Uscanga is seeking to suppress, but the following facts are undisputed. During the execution of the first search warrant, Mr. Rios-Uscanga was taken into custody. Def.'s Mem. at 4. After his arrest, law enforcement officers interviewed Mr. Rios-Uscanga and he answered questions before receiving a *Miranda* warning. *See* Def.'s Mem. at 1, 4, 9; Gov't's Post-Hr'g Resp. to Def.'s Pretrial Mot. to Suppress ("Gov't's Mem."), at 10-11, ECF No. 52. Neither party has submitted additional information regarding the statement.

## II.   The Initial Warrant Does Not Establish Probable Cause

After reviewing the materials submitted by Mr. Rios-Uscanga, the Court concludes that the warrant to search the Russell Avenue home was not based on probable cause. Specifically, the warrant affidavit failed to establish that the evidence sought, proof of drug trafficking, would be found at the residence.

"Probable cause exists where there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Skoda*, 705 F.3d 834, 838 (8th Cir. 2013) (quotation marks omitted) (citing *United States v. Donnelly*, 475 F.3d 946, 954 (8th Cir. 2007) and *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). When determining whether probable cause exists, a court does not independently evaluate each piece of information, but, rather, considers "all of the facts for their cumulative meaning." *United States v. Allen*, 297 F.3d 790, 794 (8th Cir. 2002). "A showing of probable cause requires evidence of a nexus between the contraband and the place to be searched." *United States v. Skarda*, 845 F.3d 370 (8th Cir. 2016) (quotation marks omitted) (quoting *United States v. Tellez*, 217 F.3d 547, 550 (8th Cir. 2000)). The task of a court issuing a search warrant is "simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gates*, 462 U.S. at 238; *see also United States v. Seidel*, 677 F.3d 334, 337 (8th Cir. 2012).

The fatal flaw in the affidavit for the search of the Russell Avenue residence is the lack of probable cause that evidence of Mr. Rios-Uscanga's crimes would be found in the house. Certainly, the nexus showing required by the Fourth Amendment need not be very significant. *See, e.g., United States v. Ross*, 487 F.3d 1120, 1123 (8th Cir. 2007) (nexus to search individual's home exists where that person is closely tied to narcotics trafficking); *United States v. Patterson*, No. 15-3947, 2016 WL 7404778, at *2 (8th Cir. Dec. 22, 2016) (per curiam) (frequent visits to a home by a known drug

dealer can establish nexus to search a home for contraband); *United States v. Keele*, 589 F.3d 940, 944 (8th Cir. 2009) (nexus sufficient to justify a warrant existed between narcotics found at a car accident scene and the driver's home). And the Eighth Circuit has essentially presumed that a sufficient nexus exists to search the home of someone known to be involved in drug trafficking, even without specific evidence tying his or her criminal activities to that home. *See, e.g.*, *Keele*, 589 F.3d at 944. However, the affidavit in this case provided no nexus whatsoever between the contraband sought—narcotics, firearms, and associated evidence—and the place to be searched—Ms. Castro's home. There was no assertion or even suggestion in the affidavit that the residence to be searched is Mr. Rios-Uscanga's home. The affidavit did not state that Mr. Rios-Uscanga even stayed occasionally at the home, but only that it is "listed" to his girlfriend. Ex. A at 61. While the affidavit said Mr. Rios-Uscanga was seen entering and exiting, it did not allege that this observation occurred more than once.

Of course, Officer Muro could have still established probable cause to search the house even if Mr. Rios-Uscanga did not live there. The warrant could have established an adequate nexus by showing a tie between the house and Mr. Rios-Uscanga's illicit activities. The affidavit also failed to do this. It did not mention any potential involvement of Ms. Castro in those activities. And there was no connection whatsoever drawn between the Russell Avenue home and either the historic or planned controlled buy involving Mr. Rios-Uscanga.

Though less fatal, weaknesses in other portions of the affidavit support the conclusion that it failed to establish any nexus between the contraband and the place to be searched. The affidavit was silent about how "Primo" was identified as "Alex E. Rios." It contained no detail about when or where the historic controlled purchase of narcotics took place. And it contained no detail about who identified Ms. Castro as Mr. Rios-Uscanga's girlfriend, how that person knew about the relationship, when the identification was made, or how the home was identified as being Ms. Castro's. These temporal and factual details were not all necessary, but such facts could have bolstered Officer Muro's request to search the home. And the absence of such details further undermines the government's assertions that the warrant application established probable cause.

Indeed, recent Eighth Circuit decisions exploring probable cause highlight the sort of facts that are missing from this affidavit. *See, e.g.*, *Patterson*, 2016 WL 7404778, at *2 (affirming probable cause to search residence based on frequent visits by a

known drug dealer who used the home for storage); *Keele*, 589 F.3d at 944 (affirming probable cause to search driver's home where narcotics were found at a car accident scene); *Ross*, 487 F.3d at 1123 (affirming probable cause to search individual's home where that person is closely tied to narcotics trafficking); *United States v. Briscoe*, 317 F.3d 906, 908 (8th Cir. 2003) (affirming probable cause based on evidence of drug use found in a trash pull); *United States v. Hartje*, 251 F.3d 771, 774 (8th Cir. 2001) (affirming probable cause based on strong showing of narcotics distribution at suspect's residence); *United States v. Walker*, 230 F.3d 1365 (8th Cir. 2000) (per curiam) (affirming probable cause to search mother's and girlfriend's homes where affidavit established reliability of informant and informant said the suspect stored narcotics and cash at both locations); *United States v. Jackson*, 898 F.2d 79, 81 (8th Cir. 1990) (affirming probable cause based on confirmation that utility bill was in suspect's name). Here, none of those facts are present. The affidavit offered no probable cause whatsoever that Mr. Rios-Uscanga either lived at the house or that there was any link between the home and his drug activities.

The Court declines the government's invitation to simply read the missing information into the affidavit. In its briefing, the government argues:

> During the investigation, law enforcement also determined that [Mr. Rios-Uscanga] was an occupant of the Russell Avenue residence. . . . Although the affidavit does not state specifically that [Mr. Rios-Uscanga] was an occupant of the residence in the same paragraph which discusses the facts which would lead them to believe that he was an occupant, the affidavit clearly reaches that conclusion when discussing the items that a drug trafficking occupant would maintain at their residence.

Gov't's Mem. at 3 & n.1. The government asks the Court to assume that the law enforcement officers investigating Mr. Rios-Uscanga knew he was an occupant of the Russell Avenue residence, but simply failed to say so.

For two reasons, the Court cannot take such action to fill in the gaps in this contested warrant. First, the government's reading of the probable cause jurisprudence would leave little point in reviewing warrants at all. Reviewing courts would need to assume that officers had good information on which to base a search, even if it was never provided to the issuing judge. Such an argument finds no support in the law. *United States v. O'Dell*, 766 F.3d 870, 874 (8th Cir. 2014) ("When the issuing

7

judge relied solely upon the supporting affidavit to issue the search warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." (alteration omitted) (citing *United States v. Solomon*, 432 F.3d 824, 827 (8th Cir. 2005))).

Second, the government essentially asks the Court to assume that Mr. Rios-Uscanga must have lived at the home because only that assumption could explain the officers' desire to search it. However, probable cause jurisprudence is full of requests to search places where a known drug dealer might store his drugs aside from his own home. *E.g.*, *United States v. Ways*, 832 F.3d 887, 892 (8th Cir. 2016) (finding probable existed to search defendant's retail stores for narcotics), *reh'g denied* (Oct. 19, 2016), *cert. denied*, No. 16-7622, 2017 WL 320816 (U.S. Feb. 21, 2017); *Walker*, 230 F.3d at 1365. The police could have asked to search this house because they knew Mr. Rios-Uscanga lived there or because they believed he stored his narcotics at his girlfriend's house, or because she was his drug source. The government invites the Court to adopt one of these unstated reasons over the others, but none are included in the affidavit. And without the rationale more explicitly stated on the face of the affidavit, the Court cannot find that an appropriate probable cause nexus was established.

### III.   The Good-Faith Exception Does Not Apply

The lack of probable cause in this application does not end the inquiry. When a warrant is not supported by probable cause, before determining that evidence must be suppressed, a reviewing court must consider whether it was "objectively reasonable" for an officer executing the search to rely "in good faith . . . on the judge's determination that there was probable cause to issue the warrant." *United States v. Hudspeth*, 525 F.3d 667, 676 (8th Cir. 2008). That is, the reviewing court must ask whether the warrant is "so facially lacking in probable cause as to preclude the executing officers' good faith reliance thereon." *United States v. McNeil*, 184 F.3d 770, 775 (8th Cir. 1999) (citing *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). This test requires a warrant affidavit be "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *United States v. Leon*, 468 U.S. 897, 923 (1984) (citing *Brown v. Illinois*, 422 U.S., at 610-11 (Powell, J., concurring in part). Certainly, it is rare for a search warrant affidavit to be so flawed as to meet this demanding standard. But this is that rare instance.

In *United States v. Herron*, the Eighth Circuit held that the good-faith exception does not save a search warrant where the supporting affidavit provided no evidence of illegal activity at the address to be searched. *United States v. Herron*, 215 F.3d 812, 815 (8th Cir. 2003) (finding that lack of evidence in a search warrant affidavit and the "obvious nature of the deficiency" meant an officer could not reasonably rely on the warrant). In that case, Tommie Buck was suspected of growing marijuana on his farm, which was near Mr. Herron's property. *Id.* at 813. Mr. Herron and Mr. Buck were cousins. *Id.* Mr. Herron had two previous convictions for cultivating marijuana in a different state, and Mr. Buck had been living at Mr. Herron's farm four months before the warrant was issued. *Id.* The warrant affidavit said little else tying Mr. Buck's suspected illegal activity to either Mr. Herron or his property. *Id.* at 814 ("[T]he affidavits simply do not say very much about Mr. Herron or his residence."). The Eighth Circuit held that the flaws in the affidavit went beyond mere technical legal deficiencies, and as a result, that the good-faith exception did not apply. *See id.* at 814; *cf. United States v. Carpenter*, 341 F.3d 666, 673 (8th Cir. 2003) (finding good-faith exception applied where "potential legal deficiencies" were minor). By contrast, the Eighth Circuit has indicated that failing to specifically mention that narcotics are likely to be found in a suspect's home is a "technical legal deficiency" where the affidavit at issue contained an established connection between an individual and the drug trade and the targeted residence was specifically identified as that individual's home. *Carpenter*, 341 F.3d at 673.

In this case, the Russell Avenue warrant affidavit did not contain the supporting indicia that led the *Carpenter* court to apply the good-faith exception. The affidavit seeking permission to search the Russell Avenue residence tied Mr. Rios-Uscanga to narcotics trafficking, but did not establish the home's connection to those activities, either through Ms. Castro's participation or through Mr. Rios-Uscanga's residency. As such, this case closely mirrors the facts of *Herron*. Mr. Rios-Uscanga was known to have been at Russell Avenue home at least once, which is even more attenuated than the facts in *Herron*, where the suspect was known to have once lived on Mr. Herron's farm. As with Mr. Herron's property, there is simply no indication in the affidavit that the Russell Avenue home was connected to the suspect's activities.

The government points to two cases, *Carpenter* and *Ross*, to argue that *Herron*'s holding is inapplicable to Mr. Rios-Uscanga's case. Both *Carpenter* and *Ross* post-date *Herron* and underscore that the Supreme Court used particularly strong language in

9

saying that officers' good-faith reliance on a warrant must be "entirely unreasonable" to be outside the scope of the *Leon* exception. *Ross*, 487 F.3d at 1122-23 (citing *Carpenter*, 341 F.3d at 670 and *Leon*, 468 U.S. at 923). *Ross* also indicates that the Eighth Circuit is moving increasingly close to adopting a per se rule that probable cause to search an individual's home exists where there is probable cause to arrest that individual for drug trafficking offenses. *Ross*, 487 F.3d at 1123. But neither *Ross* nor *Carpenter* involve a factual landscape that matches Mr. Rios-Uscanga's case as closely as *Herron* does, and any rule hinted at in *Ross* does not apply to this case. Both of the later cases find that the good-faith exception saved warrants to search *the homes of individuals* identified as participants in the drug trade. *Carpenter*, 341 F.3d at 667-68; *Ross*, 487 F.3d at 1122. However, this case involved a warrant to search a home belonging to someone who, based on the information included in the affidavit, was entirely unaffiliated with Mr. Rios-Uscanga's drug activities. The affidavit's omission of any sort of nexus between the home and the contraband sought is uniquely glaring and cannot be dismissed as a mere technical deficiency. The Court finds that this is the rare instance where a warrant affidavit is "so facially lacking in probable cause as to preclude the executing officers' good faith reliance" on the warrant. *McNeil*, 184 F.3d at 775.

   The Eighth Circuit's *Herron* decision does not stand alone. Other circuit courts have found police reliance on warrants entirely unreasonable where supporting affidavits failed to demonstrate a nexus between suspected criminal activity and the place to be searched. *See, e.g.*, *United States v. Brown*, 828 F.3d 375, 385-86 (6th Cir. 2016) (concluding the district court erred in denying a motion to dismiss and that reliance on the warrant was entirely unreasonable where the affidavit did not draw a "plausible connection to the residence" to be searched); *United States v. Underwood*, 725 F.3d 1076, 1086-87 (9th Cir. 2013) (affirming district court's suppression order and concluding that the *Leon* exception did not apply where the affidavit provided "*no* factual basis for the conclusion that drug trafficking evidence would be found at [the defendant's] home" (emphasis in original)); *United States v. Gonzales*, 399 F.3d 1225, (10th Cir. 2005) (finding the *Leon* exception inapplicable where the affidavit lacked a "factual basis connecting the place to be searched to the defendant or suspected criminal activity" so that reliance on the warrant was "entirely unreasonable"); *United States v. Laughton*, 409 F.3d 744, 749 (6th Cir. 2005) (reversing a district court decision based on the *Leon* exception where there was no "modicum of evidence, however slight, to connect the criminal activity to the place to be searched"). This case,

10

likewise, is the rare one where the complete lack of nexus renders reliance on the warrant entirely unreasonable precisely because there was no connection in the affidavit drawn between Ms. Castro's home and Mr. Rios-Uscanga's activities.

### IV.  Fruit of the Poisonous Tree

#### A.  The Search Warrants and Physical Evidence

"Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Segura v. United States*, 468 U.S. 796, 804 (1984). And the exclusionary rule applies with equal force to evidence that is derivative of an illegal search, unless the connection between the constitutional violation and the evidence is "so attenuated as to dissipate the taint." *Wong Sun v. United States*, 371 U.S. 471, 487 (1963) (citing *Nardone v. United States*, 308 U.S. 338, 341 (1939)). It is the defendant's burden to make an initial showing that evidence has been tainted by an unconstitutional search. *See United States v. Riesselman*, 646 F.3d 1072, 1079 (8th Cir. 2011). Once the defendant has done so, "the ultimate burden of persuasion to show the evidence is untainted lies with the government." *Id.*

As explained above, the evidence seized from the Russell Avenue home must be suppressed because the search warrant was fatally flawed. It was the government's burden to establish that the subsequent warrants and the physical evidence seized as a result of them were untainted by the initial flawed warrant. However, the government conceded that if the warrant of the Russell Avenue home was unlawful, the subsequent search warrants and physical evidence seized as a result are fruit of the poisonous tree. Gov't's Mem. at 11. As a result, the Court recommends that the physical evidence seized pursuant to the four warrants at issue in this case be suppressed as fruit of the poisonous tree.

#### B.  Mr. Rios-Uscanga's Pre-*Miranda* Statement

"[S]tatements obtained as a result of a Fourth Amendment violation are as much subject to the exclusionary rule as are items of physical evidence discovered during an illegal search." *United States v. Yousif*, 308 F.3d 820, 832 (8th Cir. 2002). And "statements that result from an illegal detention are not admissible." *United States v. Vega-Rico*, 417 F.3d 976, 979 (8th Cir. 2005) (alteration and citations omitted). However, statements made as a result of an illegal search implicate a separate "fruits" analysis than physical evidence seized as a result of the same search.

11

Statements should not be suppressed where they can be independently admitted, even where physical evidence seized during the same search is suppressed. *Id.* This is, at least in part, because the Fourth Amendment does not generally protect "statements made outside [a criminal suspect's] premises where the police have probable cause to arrest the suspect for committing a crime." *New York v. Harris*, 495 U.S. 14, 17 (1990).

The Court recommends that Mr. Rios-Uscanga's pre-*Miranda* statements not be suppressed as fruit of the poisonous tree for two reasons. First, Mr. Rios-Uscanga fails to sufficiently establish that the statements are indeed fruit of the unlawful search of the Russell Avenue residence. There is no detail in either Mr. Rios-Uscanga's motion or his post-hearing briefing about the timing of the statements, the setting in which they were obtained, or the general factual landscape surrounding them. Second, and relatedly, there is no authority cited in Mr. Rios-Uscanga's brief that supports the proposition that a statement can be suppressed as fruit of an unlawful *search* rather than as fruit of an unlawful seizure. And there is no suggestion that the arrest of Mr. Rios-Uscanga was unlawful. For both of these reasons, Mr. Rios-Uscanga has failed to meet his burden of demonstrating the statements are fruit of the unlawful search of the Russell Avenue residence and should not be suppressed on that basis. *Riesselman*, 646 F.3d at 1079.

## V.   Conclusion

In light of the deficiencies outlined above, the Court cannot find that the initial warrant to search 5101 Russell Avenue North was based on a legally sufficient showing of probable cause. Moreover, the flaw in the warrant affidavit was so apparent that a reasonable officer could not have believed the warrant was valid. As such, the physical evidence seized at the Russell Avenue residence should be suppressed. As the government conceded, because the subsequent search warrants relied so heavily on the evidence seized at the home, they are likewise tainted and physical evidence seized as a result of the later warrants should also be suppressed. However, because Mr. Rios-Uscanga failed to adequately establish that the October 5, 2016 statement to law enforcement was fruit of the poisonous tree, the interview should not be suppressed.

## Recommendation

Based on the foregoing, the Court, **HEREBY RECOMMENDS** that:

1. Mr. Rios-Uscanga's Pretrial Motion to Suppress Fruits of Unlawful Search and Seizure (ECF No. 30) be **GRANTED IN PART AND DENIED IN PART**.

2. Any physical evidence seized as a result of any of the four warrants be **SUPPRESSED** as fruit of the improper initial warrant.

3. The statements made by Mr. Rios-Uscanga during the interview after the search of the home **NOT BE SUBJECT TO SUPPRESSION** as fruit of the improper initial warrant.

Date: March 13, 2017
                                                             s/ *Katherine Menendez*
                                                            Katherine Menendez
                                                            United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.

13

# ATTACHMENT A

Application 1-1

STATE OF MINNESOTA, COUNTY OF HENNEPIN COUNTY DISTRICT COURT

| | | |
|---|---|---|
| STATE OF MINNESOTA | ) | APPLICATION FOR SEARCH WARRANT AND |
| | ) SS. | SUPPORTING AFFIDAVIT. |
| COUNTY OF HENNEPIN | | |

Officer Ricardo Muro, being duly sworn upon oath, hereby makes application to this Court for a warrant to search the premises hereinafter described, for the property and things hereinafter described.

Affiant knows the contents of this application and supporting affidavit, and the statements herein are true of his/her own knowledge, save as to such as are herein stated on information and belief, and as to those, he/she believes them to be true.

Affiant has good reason to believe, and does believe, that the following described property and things, to wit:

    1. **Narcotics, but not limited to cocaine and methamphetamine.**

    2. **Monies obtained from illegal sales of controlled substances.**

    3. **Weighing and packing materials.**

    4. **Telecommunications devices to facilitate narcotics sales.**

    5. **Writings, drug notes, mailings showing constructive possession of control substances or standings at a particular address.**

    6. **Firearms.**

will be at the premises described as:

    5101 Russell Ave North in the City of Minneapolis and any unattached buildings associated with the address.

located in the City of Minneapolis, County of Hennepin, and State of Minnesota.

This affiant applies for issuance of a search warrant upon the following grounds:

2. The property above-described was used as means of committing a crime.
3. The possession of the property above-described constitutes a crime.
4. The property above-described is in the possession of a person with intent to use such property as a means of committing a crime.
5. The property above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime.

COPIES TO:   COURT   •   PROS.ATTY   •   PEACE OFFICER

00000059

Application 1-2

The facts tending to establish the foregoing grounds for issuance of a search warrant are as follows:

Your Affiant, Ricardo Muro is a Police Officer currently assigned to the Minneapolis Weapons Unit. Your Affiant has 14 years' experience as a Police Officer and is a Task Force Officer with Homeland Security Investigations. Your Affiant has been involved in firearms and narcotic investigations resulting in the arrests and the recovery of firearms, narcotics, monies and related contraband in the Federal and State level. Acting in this capacity, he gives the following information:

Your affiant has been working closely with a Confidential Reliable Informant (CRI herein) that has made your affiant aware of a narcotics dealer operating in the Metro Area. The CRI knows the narcotics dealer only as "PRIMO". Though the course of the investigation and physical surveillance, "PRIMO" has been identified only as ALEX E. RIOS. Photographs have been shown to the CRI of this individual, in which they have positively identified for Law Enforcement. In the recent past, at the request and control of Law Enforcement, a controlled buy of narcotics was conducted by the CRI from "PRIMO". The CRI exchanged pre-recorded U.S. currency for narcotics, which were later property inventoried. Narcotics were field tested positive and property inventoried.

Within the last 72 hrs. at the request and presence of your affiant, the CRI placed a phone call and exchanged text messages RIOS requesting more narcotics. RIOS stated that he had narcotics available for purchase, and also openly discussed weights, prices and meet locations with the CRI.

Through physical surveillance, your affiant has seen RIOS enter and exit 5101 Russell Ave N in the City of Minneapolis. A yellow Hummer, which is known to be RIOS's vehicle has been seen parked in front of the address. The 5101 Russell Ave N. is listed to an ALEJANDRA CRUZ CASTRO▮▮▮/1993, who has been identified as RIOS's girlfriend.

This CRI has been utilized by your affiant and other Officers whose information has led to the execution of search warrants, arrests, recovers of illegal narcotics, firearms and monies which has been prosecuted at the State and Federal Court level.

Therefore, based on the above information, your Affiant respectfully request a warrant be granted for 5101 Russell Ave N, including any detached building belonging to the address in the City of Minneapolis. Your affiant believes this address is being utilized for the storage of narcotics and/or narcotics proceeds. It is your Affiant's training and experience the occupants are likely to conceal throughout the dwelling, illegal drugs, monies, weapons to protect their narcotics and narcotics profits, and any stolen property traded for drugs and related contraband.

COPIES TO:   COURT   •   PROS.ATTY   •   PEACE OFFICER

00000060

Application 1-3

RE: 5101 Russell Ave N Minneapolis MN
Officer Muro #4899

WHEREFORE, Affiant requests a search warrant be issued, commanding Officers under my control, (a) peace officer(s), of the State of Minnesota, in the daytime only to search the hereinbefore described premises for the described property and things and to seize said property and things and keep said property and things in custody until the same be dealt with according to law.

Affiant:   Officer Ricardo Muro

Subscribed and sworn to before me this
4 day of Oct , 2016

Judge of Hennepin County District Court

COPIES TO:   COURT    •    PROS.ATTY    •    PEACE OFFICER

00000061

2-1

## SEARCH WARRANT

STATE OF MINNESOTA, COUNTY OF HENNEPIN COUNTY DISTRICT COURT
TO: OFFICERS UNDER MY CONTROL, (A) PEACE OFFICERS OF THE STATE OF MINNESOTA.

WHEREAS, OFFICER RICARDO MURO has this day on oath, made application to the said Court applying for issuance of a search warrant to search the following described premises: **5101 Russell Ave North in the City of Minneapolis and any unattached buildings associated with the address**, County of Hennepin STATE OF MINNESOTA for the following described property and things:

    1. **Narcotics, but not limited to cocaine and methamphetamine.**

    2. **Monies obtained from illegal sales of controlled substances.**

    3. **Weighing and packing materials.**

    4. **Telecommunications devices to facilitate narcotics sales.**

    5. **Writings, drug notes, mailings showing constructive possession of control substances or standings at a particular address.**

    6. **Firearms.**

WHEREAS, the application and supporting affidavit of Officer Ricardo Muro was/were duly presented and read by the Court, and being fully advised in the premises.
NOW, THEREFORE, the Court finds that probable cause exists for the issuance of a search warrant upon the following grounds:

2. **The property above-described was used as means of committing a crime.**
3. **The possession of the property above-described constitutes a crime.**
4. **The property above-described is in the possession of a person with intent to use such property as a means of committing a crime.**
5. **The property above-described constitutes evidence which tends to show a crime has been committed, or tends to show that a particular person has committed a crime.**

The Court further finds that probable cause exists to believe that the above-described property and things will be at the above-described premises: **5101 Russell Ave North in the City of Minneapolis and any unattached buildings associated with the address.**

NOW, THEREFORE, YOU OFFICERS UNDER MY CONTROL THE PEACE OFFICER(S) AFORESAID ARE HEREBY COMMANDED IN THE DAYTIME ONLY TO SEARCH THE DESCRIBED PREMISES: 5101 RUSSELL AVE NORTH IN THE CITY OF MINNEAPOLIS AND ANY UNATTACHED BUILDINGS ASSICATED WITH THE ADDRESS. FOR THE ABOVE-DESCRIBED PROPERTY AND THINGS, AND TO SEIZE SAID PROPERTY AND THINGS AND TO RETAIN THEM IN CUSTODY SUBJECT TO COURT ORDER AND ACCORDING TO LAW.

BY THE COURT:

Dated: October 4, 2016

JUDGE OF HENNEPIN COUNTY DISTRICT COURT

COPIES TO:   COURT   •   PROS.ATTY   •   PEACE OFFICER   •   PREMISES/PERSON

00000062

16-342106

STATE OF MINNESOTA, COUNTY OF HENNEPIN, DISTRICT COURT

**RECEIPT, INVENTORY AND RETURN**

I, Ricardo Muro, received the attached search warrant issued by The Honorable Judge Poston on Oct 4th, 2016, at ____ o-clock P .m., and have executed it as follows:

Pursuant to said warrant, on Oct 5th, 2016 at 0500 o'clock A .m., I searched the ☒ premises ☐ motor vehicle ☐ person described in said warrant, and left a true and correct copy of said warrant ☐ with ☐ in ☒ at: 5101 Russell Avenue North

I took into custody property named in said warrant and listed below:

1. Codd .45 cal Thompson handgun serial # AOL 27716 / 1 handgun mag (Lipinski)
2. Macco Repair estimate to Alex Rios
3. 2 plastic containers which contain numerous plastic baggies + 1 small plastic contains
4. duct tape / plastic wrap brick suspected cocaine (downstairs B/R Night stand) left cabinet door. (Schmitt)
5. T-Mobile invoice
6. Silver digital scale (Top of Night stand) (Schmitt)
7. 1 Black Volkswagen Key fob (Lipinski) Wall behind Hat
8. 1 Black box containing numerous plastic baggies
9. 1 Black puma bag with ID, passport, wallet (Sct) under bed.
10. 2 cash envelopes
11. 1 Box of pcm 308 bullets (Lipinski)
12. Court paper (Alex Rios, citation) (Lipinski) cabinet
13. White HTC phone
14. large plastic bag w/ 3 seprate bags of suspected Heroin (Ceiling)
15. Silver digital scale, car title, yellow temp sticker, Blk Lg phone (Lipinski)
16. Tape wrapped brick (JB Werner)
17. Large Black Duffle bag (Schmitt)
18. Windham Weaponry 223 model WW-15 serial #WW098809

☐ I left a receipt for the property and things listed with the warrant as set forth above.

☐ None of the items set forth in this search warrant were found.

I shall ☒ retain or ☐ deliver custody of said property as directed by Court Order.

I, _____, being first duly sworn, upon oath, deposes and says that he or she has read the foregoing Receipt, Inventory and Return and the matters are true and correct, except as to such matters stated therein or information and belief, and as to those, he or she believes them to be true.

Subscribed and sworn to before me this
____ day of _____, 20 ___.

Signature _____

Notary Public Signature _____

County _____

My Commission Expires _____

Copy Distribution: **White**: Court **Yellow**: Prosecuting Attorney **Pink**: Peace Officer **Goldenrod**: Premises/Person

MP-3603 Rev. 5/2008

00000063

16-362106

STATE OF MINNESOTA, COUNTY OF HENNEPIN, DISTRICT COURT

**RECEIPT, INVENTORY AND RETURN**

I, __Ricardo Muro__, received the attached search warrant issued by The Honorable __Judge Poston__ on __Oct. 4th__, 20__16__, at _____ o-clock __P__.m., and have executed it as follows:

Pursuant to said warrant, on __Oct 5th__, 20__16__ at __119__ O'clock __A__.m., I searched the ☒ premises ☐ motor vehicle ☐ person described in said warrant, and left a true and correct copy of said warrant ☐ with ☐ in ☒ at: __5101 Russell Avenue North__

I took into custody property named in said warrant and listed below:

(19) CN Romarm .762x39 mm Serial # KB-4030-79 RO (Werner) from Blk case in garage + Mags + Ammo
(20) Black hat w/ Galaxy Note 7
(21) Blue LG Flip phone (Muro)

☒ I left a receipt for the property and things listed with the warrant as set forth above.
☐ None of the items set forth in this search warrant were found.

I shall ☐ retain or ☐ deliver custody of said property as directed by Court Order.

I, _____, being first duly sworn, upon oath, deposes and says that he or she has read the foregoing Receipt, Inventory and Return and the matters are true and correct, except as to such matters stated therein or information and belief, and as to those, he or she believes them to be true.

Subscribed and sworn to before me this
_____ day of _____, 20____.

_____
Signature

_____
Notary Public Signature

_____
County

_____
My Commission Expires

Copy Distribution: **White**: Court  **Yellow**: Prosecuting Attorney  **Pink**: Peace Officer  **Goldenrod**: Premises/Person

MP-3603 Rev. 5/2008

00000064